UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

VINCENT JOSEPH DARSCH,          )
            Plaintiff           )
                                )
            v.                  )   C.A. No. 10-cv-30102-MAP
                                )
MICHAEL J. ASTRUE,              )
COMMISSIONER, SOCIAL            )
SECURITY ADMINISTRATION         )
            Defendant           )

MEMORANDUM AND ORDER REGARDING
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND
DEFENDANT'S MOTION TO AFFIRM DECISION OF COMMISSIONER
(Dkt. Nos. 8 & 10)

March 18, 2011

PONSOR, D.J.

## I. INTRODUCTION

Plaintiff Vincent Darsch has brought this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his supplemental security income ("SSI") benefits. Plaintiff applied for SSI benefits in September 2007, alleging disability since March 1, 2006, resulting primarily from lower back pain. A federal reviewing official ("FRO") reviewed and denied Plaintiff's claim on October 15, 2008. Plaintiff then requested a hearing by an administrative law judge ("ALJ"), which was

held on December 15, 2009.  The ALJ issued a decision on January 7, 2010, denying Plaintiff's claim.  (A.R. 4-19.)  On April 13, 2010, the Decision Review Board notified Plaintiff that it did not complete a review of his claim and therefore the ALJ's decision would become the final decision of the Commissioner.  (A.R. 1-3.)  Plaintiff then filed this complaint.

Plaintiff now moves for judgment on the pleadings (Dkt. No. 8.), and Defendant moves for an order affirming the decision of the Commissioner (Dkt. No. 10).  For the reasons stated below, Plaintiff's motion will be denied, and Defendant's motion will be allowed.

## II. FACTS

### A.   Personal Life and Work Experience.

Plaintiff was born in 1972 and was thirty-seven years old when the ALJ rendered her decision.  Plaintiff has a high school equivalent education and has worked previously as a machine operator, forklift operator, machine-shop laborer, and assistant at an auto-body repair shop.  (A.R. 42.)  In 2003 Plaintiff was injured in a motor vehicle accident that has caused him ongoing back pain.  (A.R. 54.)

Plaintiff alleges disability since March 1, 2006. (A.R. 54.)

B.   <u>Medical History</u>.

Plaintiff began seeing his primary care physician, Dr. T. K. Raman, in November 2006. Plaintiff complained of back pain, stiffness, and difficulty walking. Dr. Raman reviewed his medical history and diagnosed him with lower back pain and hyperthyroidism. (A.R. 269-70.) Dr. Raman followed up with a CT scan, which showed some outgrowth of bone, and X-rays, which showed mild degenerative changes with narrowing disc space on one level. (A.R. 214.)

Plaintiff continued to see Dr. Raman periodically in 2006 and 2007. Plaintiff reported no improvement to Dr. Raman throughout 2007, leading Dr. Raman to recommend an MRI and pain management. (A.R. 264.) On December 18, 2007, Dr. Raman opined that Plaintiff was totally disabled and unable to work. (A.R. 312.)

On January 12, 2007, Plaintiff met with Dr. Scott Cowan from New England Orthopedic Surgeons for pain in his back and lower legs. Dr. Cowan noted that Plaintiff was alert, oriented, and in no acute distress. He diagnosed Plaintiff

with lumbar arthrosis[1] and recommended physical therapy.
(A.R. 247.)

On April 24, 2007, Plaintiff met with Dr. Thenu
Manikantan at Baystate Medical Center.  (A.R. 238.)  After
reviewing MRI findings, Dr. Manikantan diagnosed Plaintiff
with degenerative disc disease and lumbar radiculitis, and
recommended a series of epidural steroid injections.  (A.R.
239.)

Plaintiff saw Dr. Manikantan again on July 24, 2007,
complaining of lower back pain radiating into both legs.
Dr. Manikantan noted decreased range of motion and
tenderness in the lumbar spine.  (A.R. 231.)  He also
observed that Plaintiff had full power in all muscle groups
and walked with a normal gait.  He ultimately referred
Plaintiff back to Dr. Cowan.  (A.R. 231.)

On August 24, 2007, Dr. Cowan noted that his recent MRI
showed degenerative disc disease and associated lower back
pain.  However, he recommended against surgery because
Plaintiff had minimal lower extremity complaints.  (A.R.

_____

[1] Arthrosis is more commonly known as osteoarthritis.
See Stedman's Medical Dictionary 151 (27th ed. 2000).

4

249.)

On November 7, 2007, Plaintiff met with Dr. Scott
Cooper to be evaluated for the possible use of a spinal cord
stimulator.[2]  (A.R. 289.)  Dr. Cooper observed that
Plaintiff was "a pleasant and cooperative gentleman in no
distress" who was able to move about the exam room without
difficulty or assistance.  (A.R. 290.)  Dr. Cooper diagnosed
Plaintiff with chronic lower back pain but no significant
lumbar radiculopathy.[3]  He also concluded that Plaintiff
might be a good candidate for the spinal cord stimulator.
(A.R. 290-91.)  Plaintiff chose not to undergo that
treatment.  (A.R. 31.)

A year and a half later, Plaintiff began treatment with
Dr. Christopher Comey, a neurosurgeon, in May 2009.  Dr.
Comey noted that Plaintiff's earlier MRIs showed severe

---

[2] Physicians use a spinal cord stimulator to alleviate
pain by electrical stimulation, which produces a tingling
sensation that masks the sensations of pain.  This technique
will manage the pain, but will not cure it.  See Stedman's
Medical Dictionary (27th ed. 2000).

[3] Radiculopathy is a condition that results when one or
more nerves are not working properly and cause pain,
weakness, or numbness.  See Stedman's Medical Dictionary
1503 (27th ed. 2000).

degenerative changes.  He also observed that Plaintiff had been evaluated for the spinal cord stimulator but still did not wish to pursue it.  (A.R. 349-50.)

On July 7, 2009, Dr. Comey again met with Plaintiff to discuss the results of an MRI administered on June 3.  Dr. Comey concluded that the results were similar to past MRIs, noting degenerative changes without stenosis.  He also determined that surgery would not provide any lasting benefit and encouraged Plaintiff to revisit the idea of a spinal cord stimulator.  (A.R. 348.)

C.   <u>RFC Questionnaires</u>.

In April 2008, Dr. Raman completed a residual functional capacity ("RFC") questionnaire in which he diagnosed Plaintiff with degenerative disc disease, resulting in "severe radicular pain" that occurred constantly.  (A.R. 423-25.)  Dr. Raman concluded that Plaintiff needed to be moving frequently during the day and that he could lift up to five pounds occasionally.  (A.R. 425-26.)  He also concluded that Plaintiff could not engage in pushing, pulling, kneeling, bending, and stooping.  (A.R. 429.)  Dr. Raman did, however, note that Plaintiff would be

only minimally limited in using his upper extremities for grabbing, turning, and twisting objects.  (A.R. 426.)  He concluded that Plaintiff could not perform even low stress jobs.  (A.R. 428.)

Dr. Comey completed a spinal impairment questionnaire in October 2009, diagnosing Plaintiff with degenerative disc disease and noting a prognosis of "fair to poor."  (A.R. 353.)  He noted that Plaintiff had severe lower back pain occurring constantly and radiating down both legs.  (A.R. 355.)  Dr. Comey opined that Plaintiff could not sit, stand, or walk for more than one hour in an eight-hour workday; could not push, pull, kneel, bend, or stoop; could lift up to twenty pounds occasionally; and could carry up to ten pounds occasionally.  (A.R. 356-57.)  He stated that Plaintiff's pain would frequently interfere with his attention and concentration.  (A.R. 357.)  He concluded that Plaintiff was incapable of even low stress work and would be absent from work more than three times a month.  (A.R. 358.)

D.    State Agency Assessment.

In November 2007, Dr. Malin Weeratne, a non-examining state physician, reviewed Plaintiff's records and also made

an RFC assessment.  Dr. Weeratne opined that Plaintiff maintained the capacity to occasionally lift twenty pounds; frequently lift ten pounds; sit, stand, or walk (with breaks) for about six hours in an eight-hour day; and had an unlimited ability to push or pull.  (A.R. 304-05.)  Dr. Weeratne concluded that Plaintiff could perform light work with postural limitations.  (A.R. 303-10.)

E.  Administrative Hearing.

Plaintiff testified at the December 2009 hearing that he spent anywhere from two to four hours a day in bed, restricted his driving to doctor's appointments and a friend's house twice a week, and did not shop. (A.R. 24-25.)  He testified that he took Percocet for pain, which caused him to lack judgment and become sleepy.  (A.R. 26-27.)  Plaintiff noted that he had had two steroid injections and some physical therapy, which did not help his pain. (A.R. 27-28.)  He said he did not obtain a spinal cord stimulator because he was told that it was not intended for his problems and there was no guarantee it would help. (A.R. 31.)

At the hearing, the ALJ asked a vocational expert

("VE") whether work existed for an individual with the following limitations: light work limited by the ability to walk and stand for a maximum of four hours in an eight-hour day and the need for a sit/stand option; occasional postural limitations except for frequent stooping; no exposure to extreme heat, cold, and hazardous machinery; and no driving. Based on these limitations, the VE found Plaintiff could perform the jobs of packer, assembler, and inspector. (A.R. 43-44.)

F.    The ALJ's Findings.

At Step One of the disability adjudicative process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2006, the alleged onset date of his claimed disability.  (A.R. 9.)  At Step Two, the ALJ found that Plaintiff's spinal disorder was a severe impairment. (A.R. 9-10.)  At Step Three, the ALJ held that Plaintiff's impairment did not meet or medically equal a Listing.  (A.R. 10.)  The ALJ then found that Plaintiff had the RFC to perform light work except that he could only walk/stand for a maximum of four hours in an eight-hour workday and he needed to be able to change positions at

will.  (A.R. 10.)  The ALJ also found that Plaintiff could only occasionally climb, bend, balance, kneel, crawl, crouch, or be exposed to heights; had to avoid exposure to extreme cold and hazards; and could not drive. (A.R. 10.) At Step Four, the ALJ found that Plaintiff could not return to his past relevant work as a machine operator, fork lift operator, or auto-body repair technician, all of which require medium or greater exertion.  (A.R. 14.)  At Step Five, the ALJ concluded that Plaintiff was able to perform the jobs of assembler, inspector, and packer, which exist in significant numbers in the national and regional economies. (A.R. 14.)

In reaching these conclusions, the ALJ gave the most weight to the opinions of Dr. Manikantan and Dr. Cooper, some weight to the opinion of Dr. Weeratne, less weight to the opinion of Dr. Comey, and little weight to the opinion of Dr. Raman.  (A.R. 12-13.)  The ALJ also noted various inconsistencies in Plaintiff's testimony at the hearing and consequently found that Plaintiff had little credibility. (A.R. 11-13.)

## III. DISCUSSION

Plaintiff argues (1) that the ALJ failed to give proper weight to the opinions of treating physicians; (2) that the ALJ failed to properly evaluate Plaintiff's credibility; and (3) that the ALJ relied upon flawed vocational testimony. For the reasons stated below, the court finds these arguments unpersuasive.

A. <u>Standard of Review</u>.

Judicial review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. <u>Seavey v. Barnhart</u>, 276 F.3d 1, 9 (1st Cir. 2001). The responsibility for weighing conflicting evidence and resolving issues of credibility belongs to the Commissioner and his designee, the administrative law judge. <u>See</u> <u>id.</u> at 10. The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is such evidence "as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401

(1971).  Accordingly, the court must affirm the
Commissioner's findings "if a reasonable mind, reviewing the
evidence in the record as a whole, could accept it as
adequate to support his conclusion."  <u>Rodriguez v. Sec'y of
Health & Human Serv.</u>, 647 F.2d 218, 222 (1st Cir. 1981).
This is true "even if the record arguably could justify a
different conclusion."  <u>Rodriguez Pagan v. Sec'y of Health &
Human Serv.</u>, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

B.   <u>Whether the ALJ Failed to Give Proper Weight to the
     Opinions of Plaintiff's Treating Physicians.</u>

     Plaintiff claims that the ALJ erred by giving
insufficient weight to his treating physicians' opinions.
Specifically, Plaintiff claims that the ALJ should have
given more weight to the opinions of Drs. Comey and Raman.

     As a general rule, more weight should be given to a
treating source's opinion if it is well supported by
medically acceptable evidence.  20 C.F.R. § 404.1527(d).
Additionally, the ALJ should give "more weight to the
opinions from the claimant's treating physicians, because
these sources are likely to be the medical professionals
most able to provide a detailed, longitudinal picture of the

claimant's medical impairments."  Id.

Here, the ALJ did not err by giving more weight to the opinions of Drs. Cooper and Manikantan, some weight to the opinion of Dr. Weeratne, and less weight to the opinions of Drs. Comey and Raman.[4]  Dr. Cooper observed that Plaintiff was not in any apparent distress and was able to move about the exam room without difficulty or assistance. (A.R. 290.)  He noted that Plaintiff did not suffer from any significant lumbar radiculopathy and concluded that Plaintiff might be a good candidate for the spinal cord stimulator.  (A.R. 290-91.)  Although Dr. Cooper did not make an RFC assessment, his treatment notes are fully consistent with the ALJ's RFC finding.

The same is true of Dr. Manikantan.  Dr. Manikantan did not submit an RFC questionnaire on Plaintiff's behalf. However, Dr. Manikantan's records support the ALJ's conclusion that Plaintiff was not totally disabled.  He observed decreased range of motion and tenderness in the lumbar spine, but also noted that both Plaintiff's gait and

_____

[4] The ALJ did not mention Dr. Cowan's observations in her opinion and apparently did not rely on them.

13

muscle strength were within normal limits.  (A.R. 231.)

The ALJ properly gave some weight to the opinion of Dr. Weeratne, a state agency physician.  It was proper not to give great weight to this opinion, as Dr. Weeratne did not examine Plaintiff.  Nonetheless, the ALJ found that Dr. Weeratne's RFC assessment was consistent with the opinions of Drs. Cooper and Manikantan, thus warranting some weight, and this court finds no reason to disagree.

As to Dr. Raman, the ALJ claimed she could not fully interpret Dr. Raman's records because of the vagueness of his comments.  More importantly, she noted that there was no evidence that Dr. Raman ever tested Plaintiff for his physical limitations.  The records provided by Dr. Raman show little more than checkmarks with fairly sparse comments about Plaintiff's conditions.  The unexplained checkmarks understandably left an unclear impression in the ALJ's mind about whether Dr. Raman performed testing to reach his findings or whether Plaintiff merely reported certain symptoms.

Similarly, the ALJ gave less weight to Dr. Comey's opinion because his treatment notes lacked evidence of

objective testing or specific observations about Plaintiff's
limitations.  Furthermore, in his RFC assessment, Dr. Comey
did not seem to have a clear understanding of the
limitations that should be placed on Plaintiff.  He noted
that Plaintiff could not sit or stand for more than one
hour, but later stated that Plaintiff could remain in any
given position for up to two hours without needing a break.
(A.R. 356-58.)  He also concluded that Plaintiff could
engage in no pushing or pulling, yet could carry up to
twenty pounds occasionally.  (A.R. 356-59.)  Finally, Dr.
Comey's limited interactions with Plaintiff provided an
additional reason for giving less weight to his opinion.
Dr. Comey saw Plaintiff only twice, thus making him unable
to provide "a detailed, longitudinal picture of the
claimant's medical impairments."  20 C.F.R. § 404.1527(d).

As to both Dr. Raman and Dr. Comey, the ALJ noted a
clear disconnect between their RFC assessments and the
imaging evidence.  By all accounts, the evidence showed that
Plaintiff suffered from disk bulges and herniations, but it
also showed that the condition had stabilized in recent
years.  In 2007, Dr. Cowan pointed out that an MRI showed

Plaintiff's condition to be "essentially unchanged" from
2003. (A.R. 249.) After Plaintiff's most recent MRI in
June 2009, Dr. Comey noted that the results were "similar"
to those found in past years. (A.R. 348.)

Although Plaintiff's counsel did a laudable job at oral
argument of responding to the ALJ's criticisms of the
opinions of Drs. Comey and Raman, the court must affirm the
Commissioner's findings "if a reasonable mind, reviewing the
evidence in the record as a whole, could accept it as
adequate to support his conclusion." Rodriguez v. Sec'y of
Health & Human Serv., 647 F.2d 218, 222 (1st Cir. 1981).
Such is the case here. For the foregoing reasons, the ALJ
did not err by giving greater weight to the opinions of Drs.
Cooper and Manikantan and less weight to the opinions of
Drs. Raman and Comey.[5]

_____

[5] Plaintiff also argues that it was error to arrive at
an RFC based on the opinions of Drs. Cooper and Manikantan,
in light of their failure to make independent RFC assess-
ments. Plaintiff relies on Rivera-Figueroa v. S.H.H.S, in
which the First Circuit "question[ed] the ALJ's ability to
assess claimant's physical capacity unaided even by an RFC
assessment from a nonexamining doctor." Rivera-Figueroa v.
S.H.H.S., 858 F.2d 48, 52 (1st Cir. 1988). This case is
easily distinguishable. Here, the ALJ had three RFC
assessments to consider -- completed by Drs. Raman, Comey,
and Weeratne -- and the fact that she gave little weight to

16

C.  <u>Plaintiff's Credibility</u>.

   Plaintiff claims that the ALJ improperly concluded that
Plaintiff's testimony lacked credibility.  Defendant
contends that the ALJ's findings properly noted several
inconsistences in Plaintiff's testimony at the hearing as
well as in his reports to various physicians.

   The ALJ must consider a wide range of factors in
judging credibility.  <u>See</u> <u>Avery v. Sec'y of Health & Human</u>
<u>Serv.</u>, 797 F.2d 19, 22-23 (1st Cir. 1986); 20 C.F.R. §
404.1529(c).  If the ALJ decides that a claimant's
subjective complaints are greater than what would be
reasonably anticipated from the objective medical evidence,
she must then consider other relevant factors, including:
(1) the nature, location, onset, duration, frequency,
radiation, and intensity of the reported pain; (2) any
precipitating and aggravating factors; (3) the type, dosage,

_____

two of them does not bring this case within the ambit of
<u>Rivera-Figueroa</u>, where, as noted, the ALJ had to assess the
plaintiff's limitations unaided by any RFC questionnaires
whatsoever. Moreover, it is perfectly appropriate for the
ALJ to piece together relevant facts and findings from
multiple physicians, as long as the ALJ's determination is
consistent with the evidence of record.  <u>See</u> <u>Evangelista v.</u>
<u>Sec'y of Health & Human Serv.</u>, 826 F.2d 136, 144 (1st Cir.
1987).

effectiveness, and side effects of any medication taken to alleviate the pain or other symptoms; (4) any treatment, other than medication, for relief of pain; (5) the claimant's functional restrictions; and (6) the claimant's daily activities. <u>Avery</u>, 797 F.2d at 22-23; 20 C.F.R. § 404.1529(c). If, after weighing the above factors, the ALJ finds that the claimant's testimony lacks credibility, she must provide an explanation that is "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996). The ALJ's credibility determination is entitled to deference as long as it is well supported by substantial evidence. <u>Acevedo Ramirez v. Sec'y of Health & Human Serv.</u>, 550 F.2d 1286, 1287 (1st Cir. 1977).

Here, the ALJ discredited Plaintiff's testimony based on several inconsistencies. First, the ALJ noted inconsistencies involving the degree of pain Plaintiff was experiencing and the point in time in which the pain radiated into one leg more than the other. On some

occasions Plaintiff reported that the pain traveling down his right leg was worse than the left, (A.R. 238.), and on other occasions he stated that the left leg was worse than the right. (A.R. 361, 418.) Plaintiff's counsel noted that it is not uncommon for radiculitis to manifest itself more strongly in different locations of the body at different times, thus undercutting the ALJ's assertion.

Had this been the only inconsistency the ALJ noted, the court might be inclined to agree. However, the ALJ also pointed out that other evidence in the record showed that Plaintiff's pain in both legs had dissipated significantly. For instance, when he visited Dr. Cowan, Plaintiff reported "minimal lower extremity complaints." (A.R. 249.) Similarly, Dr. Cooper observed that Plaintiff was "in no distress" and was able to move about without difficulty or assistance. (A.R. 290.)

The ALJ also found problematic Plaintiff's testimony that he did not pursue the spinal cord stimulator because he was told that he was not a good candidate. As the ALJ observed, the records clearly indicate otherwise. Both Dr. Cooper and Dr. Comey recommended that Plaintiff undergo this

treatment.  (A.R. 289, 348-50.)  In fact, Dr. Comey, whose
opinion Plaintiff strongly urges this court to adopt, noted
on two separate occasions that Plaintiff should reconsider
use of the spinal cord stimulator.  (A.R. 358-50.)

Finally, the ALJ found it to be an overstatement that
Plaintiff "had exhausted all conservative means [of
treatment."  (A.R. 12.)  Plaintiff attended only three
weekly physical therapy sessions and received two epidural
injections, which, the ALJ concluded, did not justify
Plaintiff's claim that such conservative treatment would
never offer him any benefit.

Given the significance and multiplicity of the above
inconsistencies, it was reasonable for the ALJ to discount
Plaintiff's credibility.

D.   VE Testimony.

Plaintiff's sole remaining argument is that the
Commissioner did not meet his burden of proving that there
are alternative jobs in the economy because the VE's
findings -- that Plaintiff could perform the jobs of packer,
assembler, and inspector -- relied on a flawed RFC
assessment by the ALJ.  However, it is Plaintiff's argument

that relies on a false premise -- that the ALJ erred in making an RFC determination based largely on the opinions of Drs. Manikantan, Cooper, and Weeratne.  Because the ALJ's findings were not flawed, as explained in Section B supra, this argument also fails.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 8) is hereby DENIED, and Defendant's Motion to Affirm the Decision of the Commissioner (Dkt. No 10) is hereby ALLOWED.  The clerk will enter judgment for Defendant.  The case may now be closed.

It is So Ordered.


/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge